**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**KHADEZA PYFROM,**
on behalf of herself and others
similarly situated

                              **Case No. 2:21-cv-4293**
                              **JUDGE EDMUND A. SARGUS, JR.**
        **Plaintiff,**             **Magistrate Judge Chelsey M. Vascura**

        v.

**CONTACTUS, LLC D/B/A**
**CONTACTUS COMMUNICATIONS,** *et al.*,

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' Motion to Strike Untimely Consents to Join Collective Action (ECF No. 59), Plaintiff's Motion for Order Allowing Certain Opt-In Plaintiffs to Participate (ECF No. 65), Plaintiff's Motion to Allow Opt-In Plaintiff to Participate (ECF No. 72), and the parties' Joint Motion to Stay with Exceptions (ECF No. 86). For the following reasons, Defendants' Motion to Strike is **DENIED**, Plaintiff's Motion to Allow Certain Opt-In Plaintiffs to Participate is **GRANTED**, Plaintiff's Motion to Allow Opt-In Plaintiff to Participate is **GRANTED**, and the parties' Joint Motion to Stay is **DENIED AS MOOT**.

## I.      BACKGROUND

On April 5, 2022, the Court conditionally certified Plaintiff Khadeza Pyfrom's collective action. (ECF No. 33.) In addition to granting conditional certification, the Court authorized Plaintiff's counsel to distribute a Court-approved notice to the putative class. (*Id.*) This Order set a 90-day deadline in which putative class members could opt in to the collective. (*Id.* at 7.)

The Court-approved Notice conveys the deadline for joining the collective action in multiple places: On the first page, the notice reads "DEADLINE FOR JOINING: [INSERT DATE 90 DAYS AFTER MAILING]," and on the second page, the Notice states that "[t]he completed Consent Form must be faxed, emailed, or postmarked no later than [INSERT 90-day Deadline] in order for you to join." (ECF No. 8-1.) As mailed, the Court-approved Notice and Consent Forms set August 1, 2022 as the deadline for joining. (*See* Ex. 1, ECF No. 59-1 (requiring the opt-in plaintiff to return the Consent Form "On or before: August 1, 2022").)

At the time Defendants filed their motion to strike, Plaintiff had already filed with the Court 43 Consent Forms after August 1, 2022, though 33 of these forms were returned to Plaintiff's counsel on or before the August 1, 2022 deadline. (ECF Nos. 55, 56, 57, and 58.) Plaintiff has since filed additional Consent Forms. (ECF Nos. 61, 63, 64, 68, 76, 80, 81, 83, 84, 85.)

On October 18, 2022, the Court reopened the opt-in period in a limited fashion. (Op. & Order, ECF No. 73.) Pursuant to this Order, the Court authorized Plaintiff to send text message notice to those putative collective members for whom Defendants had not provided an email address. (*Id.* at 3.) This Order reopened the notice period for an additional 30 days. (*Id.*)

Defendants move the Court to strike from the collective action those Consent Forms filed after August 1, 2022 because they run afoul of the opt-in deadline. (ECF No. 59.) Plaintiff opposes and requests that the Court issue an order permitting any Consent Forms returned within 60 days of the original opt-in deadline (*i.e.*, September 30, 2022) be deemed timely filed. (ECF No. 65.) And for those Consent Forms filed after September 30, 2022, Plaintiff requests that they be afforded an opportunity to demonstrate good cause to participate in this case. (*Id.*) One such late-filing opt-in plaintiff is Chelsey Hollister, and Plaintiff moves to allow this opt-in plaintiff to participate because she can demonstrate good cause for her failure to timely return her Consent

Form. (ECF No. 72.) Defendants have filed their opposition to this request (ECF No. 78), to which

Plaintiff has replied (ECF No. 82.) These motions are ripe for review.

## II.      DISCUSSION

The Court will first consider Defendants' motion to strike and Plaintiff's request for an

order that (1) deems as timely all Consent Forms returned by September 30, 2022, and (2) for those

Consent Forms returned after September 30, 2022, permission for those opt-ins to show good cause

for their untimeliness before the Court disallows their participation in the collective action. Next,

the Court will turn to Plaintiff's motion to allow an opt-in plaintiff who returned her Consent Form

after September 30, 2022 to participate in this action.

### A.  Defendants' Motion to Strike and Plaintiff's Requested Order

"In class actions, courts have equitable powers to manage the litigation in order to promote

judicial economy and fairness to litigants." *Hurt v. Commerce Energy, Inc.*, No. 1:12-CV-758,

2017 U.S. Dist. LEXIS 127104, at *2-3 (N.D. Ohio Aug. 10, 2017) (quoting *De Asencio v. Tyson

Foods, Inc.*, 342 F.3d 301, 313 (3d Cir. 2003)). For class actions brought under the Fair Labor

Standards Act ("FLSA"), the FLSA does not specify when a potential plaintiff must opt-in. *See* 29

U.S.C. §§ 216(b), 255, 256. Hence, the trial court establishes the deadlines to opt-in. *Heaps v.

Safelite Sols.*, LLC, No. 2:10-cv-729, 2011 U.S. Dist. LEXIS 150313, at *6 (S.D. Ohio Dec. 22,

2011).

While the FLSA does not provide a standard under which a court should assess whether to

permit untimely filed consent forms, courts generally balance the following factors: "(1) whether

'good cause' exists for the late submissions; (2) prejudice to the defendant; (3) how long after the

deadline passed the consent forms were filed; (4) judicial economy; and (5) the remedial purposes

of the FLSA." *Id.* (quoting *Ruggles v. Wellpoint, Inc.*, 687 F. Supp. 2d 30, 37 (N.D.N.Y. 2009)).

Balancing all of these factors, the Court finds that all Consent Forms filed with the Court prior to September 30, 2022 are timely; as such, those opt-in plaintiffs may properly be added to the collective action. Although Plaintiff does not offer good cause for her failure to timely file these Consent Forms, the remaining factors weigh in Plaintiff's favor. *See id.* (permitting late-consent opt-in plaintiffs to join collective despite absence of good cause for their failure to timely file, but all other factors weighed in their favor); *Hurt v. Commerce Energy, Inc.*, No. 1:12-CV-758, 2014 U.S. Dist. LEXIS 14842, at \*4 (N.D. Ohio Feb. 6, 2014) (permitting addition of late-filed opt-ins "[a]lthough Plaintiffs have offered no good cause for the untimeliness of these additional opt-in notices," but "all of the other factors weigh in their favor").

First, the addition of these late-filed opt-in plaintiffs will not prejudice Defendants. This is so because the Court reopened the opt-in period *after* these opt-in plaintiffs had already returned their Consent Forms. (*See* Op. & Order, ECF No. 73.) But even if the Court had not reopened the opt-in period, Defendants still would not be overly prejudiced by their participation in this action. In *Heaps*, this Court found that a 10% increase in the size of the potential class would not overly burden or prejudice the defendants. 2011 U.S. Dist. LEXIS 150313, at \*8. Here, Plaintiff has filed 57 Consent Forms between August 2, 2022 and September 30, 2022. Adding these additional opt-in plaintiffs to the collective, which consisted of 719 opt-ins at the time Defendants filed their motion to strike, would result in an 8% increase in the size of the potential collective. This does not prejudice the Defendants. *See id.*; *Abubakar v. Cnty. of Solano*, 2008 U.S. Dist. LEXIS 122997, at \*8-9 (E.D. Cal. Feb. 26, 2008) (holding a 15% increase in the size of the collective was not prejudicial). Moreover, were the Court inclined to strike these late-filed opt-in plaintiffs from this action, these opt-ins would still be able to file separate claims for relief against the Defendants, possibly resulting in prejudice *to the Defendants*. *See Kimbrel v. D.E.A. Corp.*, No. 3:14-CV-161-

4

TAV-CCS, 2015 U.S. Dist. LEXIS 38364, at *7-8 (E.D. Tenn. Mar. 26, 2015) ("Defendants would be prejudiced by these potential plaintiffs not joining the class, because the Defendants would potentially be charged with defending separate suits."). Further, given that an 8% increase in the collective's size is well within the permissible range in this Circuit, and given that the parties have yet to begin formal discovery, the Court finds that any discovery relating to these additional opt-in plaintiffs would be a *de minimis* burden. Accordingly, adding these opt-in plaintiffs does not overly prejudice Defendants.

Second, permitting the addition of the opt-in plaintiffs who returned their Consent Forms on or before September 30, 2022 aligns with this Court's decision in *Heaps*. In *Heaps*, this Court stated that consent forms "filed with the Court within a few months after the deadline" should be permitted, as they would not "present[] any unfair surprise or requir[e] that Defendants take any additional steps to defend this action." 2011 U.S. Dist. LEXIS 150313, at *8. And *Heaps* is not an outlier. *See Bernardez v. Firstsource Sols. United States*, No. 3:17-cv-613-RGJ, 2021 U.S. Dist. LEXIS 23979, at *29 (W.D. Ky. Feb. 5, 2021) (allowing opt-in plaintiff to join collective where consent form filed 3 months after deadline); *Benavidez v. Piramides Mayas, Inc.*, 2013 U.S. Dist. LEXIS 55586, at *11 (S.D.N.Y. Apr. 15, 2013) (permitting consent form filed "almost three months after the deadline"); *see also Lykins v. First Acceptance Corp.*, No. 3:13-cv-01374, 2015 U.S. Dist. LEXIS 64647, at *7 (M.D. Tenn. May 18, 2015) (collecting cases) (noting that, "generally, the majority of courts permitting late opt-ins to join collective actions were faced with a filing delay of no more than one or two months"). Here, given that the Court reopened the opt-in period in October 2022, deeming as timely all Consent Forms returned by September 30, 2022 would not present Defendants with "unfair surprise," nor would they be "require[ed] . . . [to] take any additional steps to defend this action." *See Heaps*, 2011 U.S. Dist. LEXIS 150313, at *8.

Third, judicial economy also supports adding these late-filed opt-ins. As previously discussed, even if the Court were to strike these opt-ins from the collective, they would still be able to file separate claims for relief against the Defendants. *See id.* at *8-9. Indeed, Plaintiff suggests that these opt-ins would file separate actions and then request consolidation with the case at bar. (Pl. Opp'n, ECF No. 65, p. 11.) Thus, in the interest of judicial economy, permitting the late-filed opt-ins to participate is the appropriate course of action. *See Ruggles*, 687 F. Supp. 2d 30, 38 (N.D.N.Y. 2009) ("Obviously, there is little economy in spawning identical FLSA lawsuits that themselves might be properly joined with this lawsuit in the future.").

Finally, the remedial purpose of the FLSA supports consideration of these late-filed opt-in plaintiffs. As this Court explained in *Heaps*, "[a] generous reading, in favor of those whom congress intended to benefit from the law, is also appropriate when considering issues of time limits and deadlines." 2011 U.S. Dist. LEXIS 150313, at *9-10 (quoting *Kelley v. Alamo*, 964 F.2d 747, 750 (8th Cir. 1992)).

Therefore, the Court orders that all Consent Forms returned to Plaintiff's counsel on or before September 30, 2022 are timely. Any Consent Form returned to Plaintiff's counsel after September 30, 2022 shall be excluded from the collective unless the late-filing individual can demonstrate good cause for his or her untimely filing. This Order does not apply to those Consent Forms filed as a result of text message notice and returned within the reopened opt-in period. (*See* Op.& Order, ECF No. 73.)

**B.  Plaintiff's Motion to Allow Late-Filing Opt-In Plaintiff to Participate**

The Court now turns to Plaintiff's Motion to Allow Opt-In Plaintiff to Participate. (ECF No. 72). This motion asks the Court to allow potential opt-in plaintiff Chelsey Hollister ("Hollister") to participate in this case despite signing and returning her Consent Form on October

11, 2022—71 days after the August 1, 2022 opt-in deadline. (Ex. A to Pl. Mot., ECF No. 72-1.)

Pursuant to Plaintiff's requested relief, which the Court granted in the previous section, Hollister

must demonstrate good cause for her untimely filing. Thus, the Court will only permit Hollister to

participate in this action if she can establish good cause and if the remaining *Heaps* factors weigh

in her favor.

Plaintiff argues that Hollister can establish good cause—and the Court agrees. First, despite

having the correct mailing address, Hollister never received the Court's Notice or Plaintiff's

counsel's advertising letter. (Pl. Mot., ECF No. 72, pp. 2-5; Reply, ECF No. 82, p. 3; Ex. B to Pl.

Mot. ¶¶ 7, 11, ECF No. 72-2.) This is despite Hollister's sworn practice of diligently checking her

mail. (Ex. B to Pl. Mot. ¶ 13, ECF No. 72-2 ("It is my practice to open any mail that indicates it

may be from a court or related to a lawsuit.").) Moreover, while Hollister's affidavit states that she

provided Defendants with her email address during her application process, Defendants failed to

provide her email address for notice purposes. (*Id.*; Ex. B to Pl. Mot. ¶ 9, ECF No. 72-2.)

Consequently, the sole method utilized to issue Hollister notice was U.S. Mail. This method was

unsuccessful, and it was only through a conversation with a coworker that Hollister learned of this

collective action, and she sought to join the collective shortly thereafter. (Ex. B to Pl. Mot. ¶¶ 2-4,

ECF No. 72-2.)

Defendants' arguments against finding good cause are unavailing. Defendant likens the

present case to a decision from the Eastern District of Tennessee, which found good cause lacking

where an individual, Mr. Johnson, did not learn about the lawsuit until speaking with a coworker,

and thus failed to opt in within the opt-in window. *Pierce v. Wyndham Vacation Resorts*, No. 3:13-

cv-641-PLR-CCS, 2016 U.S. Dist. LEXIS 201132 (E.D. Tenn. Feb. 11, 2016). The court identified

two issues that prevented it from finding good cause for Mr. Johnson's untimely opt in: (1) the

record was unclear as to why he was unaware of the lawsuit and (2) plaintiffs failed to offer any evidence that they mailed Mr. Johnson a consent form. *Id.* at \*12-13.

Defendants assert that this Court should apply the *Pierce* reasoning to the instant action in barring Hollister from joining the collective. But such reliance on *Pierce* would be misplaced. Here, there is less of a mystery as to why Hollister was unaware of this lawsuit: she simply did not receive notice. Defendants solely provided Hollister's mailing address in the roster used for the issuance of notice, and neither the Court's Notice nor Plaintiff's advertising letter were successfully delivered to *and* received by Hollister. Further, unlike plaintiffs' counsel in *Pierce*, Plaintiff's counsel here avers that the third-party administrator mailed notice to Hollister's correct address and the notice was not returned undeliverable. (Reply, ECF No. 82, p. 3.) Thus, neither of the two material facts from the *Pierce* decision are present here—that is, the record is not unclear as to why Hollister was unaware of the lawsuit and Plaintiff's counsel has confirmed with the third-party administrator that they mailed Hollister the relevant documents.

While neither the parties nor the Court have found a decision on all fours with the present facts, caselaw from other jurisdictions suggests that good cause may be found where the opt-in plaintiff, through no fault of her own, never receives notice or receives delayed notice, but promptly seeks to join the collective upon discovery of the lawsuit. *See Bayas v. NOR-Marathon Serv. Ctr.*, No. 16 CV 356 (FB) (CLP), 2017 U.S. Dist. LEXIS 217416, at \*12 (E.D.N.Y. Jan. 28, 2017) (indicating good cause shown where late-filing opt-in plaintiff did not receive the notice and consent forms until after the deadline to opt in had expired, but that he promptly took steps to join the case); *Boyington v. Percheron Field Servs.*, LLC, No. 3:14-cv-90, 2017 U.S. Dist. LEXIS 55548, at \*9 (W.D. Pa. Apr. 12, 2017) (finding good cause for untimely opt-ins where two individuals, despite checking their mail, never received the notice and consent forms until

8

contacting plaintiffs' counsel); *Thompson v. Peak Energy Servs., USA*, No. 13-0266, 2014 U.S. Dist. LEXIS 24190, at *4-5 (W.D. Pa. Feb. 26, 2014) (holding that the late-filing opt-in plaintiffs demonstrated good cause for their delay because, *inter alia*, they "did not receive the notice by mail, or were affected by unavoidable delays in the U.S. Postal Service").

Here, Hollister's affidavit establishes that, despite her diligence in checking her mail for legal-related mailings, she never received the Court's Notice or Plaintiff's counsel's advertising letter. And when she did finally receive notice, she acted promptly in signing her Consent Form. These facts demonstrate that Hollister acted reasonably regarding the relevant aspects over which she had control—namely, thoroughly reviewing her mail and taking appropriate steps to join the action as soon as she learned of the lawsuit. This, in turn, suggests that Hollister failed to timely opt-in through no fault of her own. Accordingly, the Court finds that good cause exists to excuse Hollister's untimely filing.

As for the remaining *Heaps* factors, they also weigh in favor of permitting Hollister to participate in the collective action. The Court will only briefly discuss these factors, as the Court's analysis in the previous section is largely applicable to its analysis here. Adding Hollister, a single opt-in plaintiff, will not overly prejudice Defendants and may, in fact, reduce the potential for prejudice by keeping Hollister's claim bundled with those of the collective. In a similar vein, retaining Hollister in this action also promotes judicial economy by facilitating resolution of Defendants' alleged FLSA-violating activity in one action rather than forcing Hollister to file—and Defendants to defend—a separate action. Furthermore, given that the Court reopened the opt-in period (*see* Op. & Order, ECF No. 73), the *Heaps* second factor (how long after the deadline passed the consent forms were filed) also weighs in favor of permitting Hollister to participate in the collective. So, too, do the remedial purposes of the FLSA.

In sum, all five factors weigh in favor of allowing Hollister to join the collective action despite her failure to submit her Consent Form prior to September 30, 2022.

### III. CONCLUSION

For the reasons stated above, Defendants' Motion to Strike Untimely Consents to Join Collective Action is **DENIED** (ECF No. 59); Plaintiff's Motion for Order Allowing Certain Opt-In Plaintiffs to Participate is **GRANTED** (ECF No. 65); Plaintiff's Motion to Allow Opt-In Plaintiff to Participate is **GRANTED** (ECF No. 72); and the parties' Joint Motion to Stay is **DENIED AS MOOT** (ECF No. 86).

This case remains open.

**IT IS SO ORDERED.**


**1/4/2023**                                    **s/Edmund A. Sargus, Jr.**
**DATED**                                       **EDMUND A. SARGUS, JR.**
                                                **UNITED STATES DISTRICT JUDGE**