IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **KHADEZA PYFROM**, on behalf of herself and others similarly situated, | : : : | |
| Plaintiff, | : : | **CASE NO. 2:21-cv-4293** |
| v. | : : | **JUDGE EDMUND A. SARGUS, JR.** |
| **CONTACTUS, LLC, d/b/a CONTACTUS COMMUNICATIONS**, | : : : | **MAGISTRATE JUDGE CHELSEY M. VASCURA** |
| Defendant. | : : | |

**JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT AND DISMISSAL WITH PREJUDICE**

Representative Plaintiff Khadeza Pyfrom ("Representative Plaintiff") and Defendant ContactUS, LLC dba ContactUS Communications ("Defendant" or "ContactUS") (collectively, the "Parties") respectfully move this Court for an Order approving their Fair Labor Standards Act ("FLSA") settlement. Representative Plaintiff's Rule 23 claims, which were not certified by this Court, are being dismissed without prejudice.[1] The settlement was reached by experienced wage and hour counsel during arms-length, good faith negotiations over the course of several months after an unsuccessful private mediation.

The following documents are submitted for the Court's approval:

Exhibit 1: Collective Action Settlement Agreement and Release (the "Agreement")[2], with the following Exhibits:

Exhibit A: List of all Plaintiffs;

---

[1] Although these claims are dismissed without prejudice, Plaintiffs have released all Ohio claims against Defendant through the settlement.

[2] Unless otherwise noted, all capitalized words and phrases used throughout this motion and brief shall have the same meaning as set forth in the Agreement.

1

Exhibit 2: Declarations of Matthew J.P. Coffman and Peter A. Contreras.

Exhibit 3: Notice of Settlement.

Exhibit 4: Proposed Order.

**MEMORANDUM IN SUPPORT**

I. **FACTUAL AND PROCEDURAL BACKGROUND.**

    A.    Summary of the Claims and Procedural History.

On August 31, 2021, Plaintiff filed this collective and class action lawsuit on behalf of herself and all other current and former employees of Defendant. (Compl., ECF No. 1.); (Coffman Decl. ¶ 9; Contreras Decl. ¶ 6).

In the Action, Plaintiff alleged that Defendant failed to pay her and all other similarly situated employees for all time spent before, during, and after their shifts when they were not actively taking customer calls or when they were unable to take customer calls for various reasons. (*Id.*) (Coffman Decl. ¶ 10; Contreras Decl. ¶ 7). Thereafter, Plaintiff filed Notices of Consent to Join on behalf of numerous opt-in plaintiffs[3] and filed her pre-discovery Motion for Conditional Class Certification and Court Supervised Notice to Potential Opt-in Plaintiffs pursuant to 29 U.S.C. § 216(b) ("Motion for Notice") (ECF No. 8.) (Coffman Decl. ¶ 11; Contreras Decl. ¶ 8). Defendants filed their Answer and Affirmative Defenses on November 22, 2021, denying liability. (ECF No. 15.)

Defendants filed their Opposition to the Motion for Notice on December 22, 2021. (ECF No. 24.) (Coffman Decl. ¶ 12; Contreras Decl. ¶ 9). Plaintiff filed her Reply in Support on January 4, 2022. (ECF No. 25.) (Coffman Decl. ¶ 13; Contreras Decl. ¶ 10). The Court granted Plaintiffs' Motion for Notice on April 5, 2022 and ordered that Plaintiff could issue notice by both U.S. mail

---

[3] (*See* ECF Nos. 2-6, 9, 10.)

and email. (ECF No. 33.) (Coffman Decl. ¶ 13; Contreras Decl. ¶ 10). The parties thereafter engaged in additional motions practice relating to the methods by which the putative collective members would receive notice and whether certain opt-ins would be permitted to participate in this action (Coffman Decl. ¶ 14; Contreras Decl. ¶ 11). Ultimately, over 960 individuals ("Opt-In Plaintiffs"), including Representative Plaintiff,[4] joined this lawsuit.

On September 23, 2022, Plaintiff served her first set of written discovery on Defendants even before the extended notice period was reopened, and more opt-in plaintiffs would subsequently join this case. Defendant requested an extension to respond to the written requests, which Plaintiff granted. After discussions between the parties, in November of 2022, Defendants' counsel indicated that Defendants were open to engaging in settlement efforts to resolve this case and that Defendants would agree to provide responses to a more limited set of discovery requests to further those discussions. (Coffman Decl. ¶ 16; Contreras Decl. ¶ 13). On November 17, 2022, Plaintiff served the limited document requests.

Thereafter, the Parties discussed the potential for a stay of certain deadlines to allow the parties to focus on preparing for and participating in the mediation. Accordingly, on December 21, 2022, the Parties filed their first Joint Motion to Stay with Exceptions to stay the case deadlines. (ECF No. 86.) Given the complexity and amount of data requested, collection of the data by Defendants took longer than expected. This led to the Parties filing their Second Joint Motion to Stay on January 30, 2023. (ECF No. 88.) (Coffman Decl. ¶ 17; Contreras Decl. ¶ 14).

The Parties ultimately mediated this case with John Marshall on August 31, 2023. Prior to the mediation, Defendant provided time and compensation records for Plaintiffs (Coffman Decl. ¶ 19; Contreras Decl. ¶ 16). Plaintiffs' counsel, with the assistance of its data analytics expert,

---

[4] Representative Plaintiff and the Opt-In Plaintiffs will collectively be referred to as "Plaintiffs."

performed a comprehensive damages analysis using the pay and time records provided. Despite a full day of mediation, the Parties were unable to reach a settlement that day (Coffman Decl. ¶ 21; Contreras Decl. ¶ 18).

The Parties continued to litigate this action following the unsuccessful mediation. In the months that followed the unsuccessful mediation, Plaintiffs' counsel received and analyzed thousands of additional documents and records from Defendant because the case was scheduled for trial early this year. (Coffman Decl. ¶ 22; Contreras Decl. ¶ 19). In December of 2023, the parties resumed their settlement efforts and ultimately reached a settlement of all claims asserted in this Action. (Coffman Decl. ¶ 23; Contreras Decl. ¶ 20). During the settlement discussions, Defendants' counsel informed Representative Plaintiff's counsel that ContactUS Technology, LTD did not employ the Plaintiffs. Therefore, the Parties agreed to move the Court to drop ContactUS Technology, LTD from this litigation. (ECF No. 112.)

   C. <u>Summary of the Key Settlement Terms</u>.

The total settlement amount is $750,000. This amount includes: (a) all individual settlement awards to approximately 960 Opt-In Plaintiffs; (b) a service award of $10,000 to Representative Plaintiff for her services in bringing and prosecuting this Action; (c) Plaintiffs' Counsel's attorney fees and litigation expenses; and (d) the cost of settlement administration. (Coffman Decl. ¶ 25; Contreras Decl. ¶ 22).

The amount of unpaid time, if any, was a primary dispute between the parties. The individual settlement awards after all deductions set forth above reflect approximately 109% of Plaintiffs' calculated overtime damages assuming 15 additional minutes of unpaid work each workday for the 2 years preceding when they joined the case. (Coffman Decl. ¶ 30; Contreras Decl. ¶ 27). This amount of time was settled upon as reasonable as a result of information learned during

4

the mediation, settlement discussions, and the discovery process. Plaintiffs will receive a proportional payment based on their workweeks in the relevant time period and their respective rates of pay. This type of allocation is commonly used in class and collective action settlements. (Coffman Decl. ¶ 29; Contreras Decl. ¶ 26). This recovery is not just fair and reasonable, it is exceptional. *See Smith v. SAC Wireless, LLC*, No. 20-10932, 2022 WL 1744785, at *3 (E.D. Mich. May 31, 2022) (citing *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1609, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010)); *see also Yorba v. Barrington Sch., LLC*, No. 2:21-cv-691, 2022 WL 2436952, at *5 (S.D. Ohio July 5, 2022) (Sargus, J.).

In exchange for the total settlement amount in the Agreement, this Lawsuit will be dismissed with prejudice, and the Plaintiffs will release Defendant from federal, state, and local wage-and-hour claims, rights, demands, liabilities and causes of action that were asserted, or could have been asserted, in the Lawsuit. (Coffman Decl. ¶ 31; Contreras Decl. ¶ 28).

## II. PROPRIETY OF APPROVAL OF THE SETTLEMENT.

The Settlement is subject to approval by the Court pursuant to § 216(b) of the FLSA. Court approval is warranted on all scores.

### A. The Seven-Factor Standard is Satisfied.

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 216(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Ents., Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353–55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to

5

determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Gov't*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008). The Sixth Circuit uses seven factors to evaluate class action settlements, which are:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)), *Crawford*, 2008 WL 4724499 at *3.

The Settlement satisfies each of these elements.

1. *No Indicia of Fraud or Collusion Exists.*

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *Bailey v. Black Tie Mgmt. Co. LLC*, No. 2:19-cv-1677, 2020 U.S. Dist. LEXIS 144274, at *6 (S.D. Ohio Aug. 12, 2020) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). The Agreement was achieved only after arm's-length and good faith negotiations between the Parties, first with the assistance of a neutral mediator. (Coffman Decl. ¶ 21; Contreras Decl. ¶ 18). However, the Parties' mediation was not successful, and they therefore continued to litigate this matter and exchange discovery for several more months. (Coffman Decl. ¶ 22; Contreras Decl. ¶ 19). They were however ultimately able to resume their settlement efforts and reach the instant settlement. (Coffman Decl. ¶ 23; Contreras Decl. ¶ 20). As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

6

      2.      *The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval.*

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See, Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *8 (S.D. Ohio Aug. 17, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted).

If this case had not settled, the Parties would be required to continue the costly litigation, such as additional formal written discovery, depositions, dispositive motions, trial, and potential appeals. The Settlement, on the other hand, provides substantial relief to the Plaintiffs promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution.

      3.      *Investigation Was Sufficient to Allow the Parties to Act Intelligently.*

The Parties engaged in substantial discovery, investigation, and analysis prior to negotiating the Settlement. Specifically, Defendant produced all necessary payroll and timekeeping information for Plaintiffs prior to the mediation. After mediation ended at impasse, the Parties began frequent meet and confer discovery conferences due to the trial schedule. Their efforts resulted in Defendant producing thousands of additional documents and data on a rolling, including badge swipe data for some of the facilities at issue, IT ticket data, discipline data, and related ESI materials. (Coffman Decl. ¶ 22; Contreras Decl. ¶ 19). Plaintiffs' Counsel analyzed such data as it was produced and requested additional information and records throughout this period before settlement discussions resumed. Plaintiffs' Counsel also engaged the services of an analyst to build a damages model which was instrumental in guiding the Parties' negotiations, both at mediation and thereafter. (Coffman Decl. ¶ 20; Contreras Decl. ¶ 17).

In addition, the Parties assessed their potential risk of loss. Thus, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

### 4. *The Risks of Litigation Favor Approval.*

The settlement represents a compromise of disputed claims. Specifically, Representative Plaintiff alleges that she and other employees were not compensated for all the work they performed. On the other hand, Defendant denies these allegations and asserts that it has fully compensated its employees for all time worked.

The Parties also disagree about the length of the limitations period, whether liquidated damages are appropriate, and whether the claims alleged can proceed collectively. (Coffman Decl. ¶ 34; Contreras Decl. ¶ 31).

Accordingly, if this case had not settled, it is possible that there would be no recovery for the Plaintiffs at all. (Coffman Decl. ¶ 38; Contreras Decl. ¶ 35).

### 5. *The Opinion of Plaintiffs' Counsel Favor Approval.*

Plaintiffs' Counsel is highly experienced in wage-and-hour collective and class actions. At all times, they have acted in good faith and have vigorously represented the interests of the Plaintiffs. Importantly, Plaintiffs' Counsel opined that the settlement is fair, reasonable, adequate, and in the best interests of the Plaintiffs (Coffman Decl. ¶ 34; Contreras Decl. ¶ 31).

The recommendation that the Court should approve the Settlement by experienced counsel is entitled to deference. *Satterly v. Airstream, Inc.*, No. 3:19-cv-32, 2020 WL 6536342, at *7 (S.D. Ohio Sept. 25, 2020) (Rice, J.); *see also Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs . . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered."); *Kritzer v.*

*Safelite Sols., LLC*, No. 2:10-cv-0729, 2012 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) (Frost, J.) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class."). Accordingly, this factor favors approval of the settlement.

      6.    *The Reaction of Absent Class Members*.

If the Court approves the settlement, the Plaintiffs will receive a payment that reflects approximately reflect approximately 109% of Plaintiffs' calculated overtime damages assuming 15 additional minutes of unpaid work each workday for the 2 years preceding when they joined the case. Plaintiffs' Counsel has not received any indication that Plaintiffs would object to such payment.

      7.    *The Public Interest*.

"Public policy generally favors settlement of class action lawsuits." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *13 (S.D. Ohio Aug. 17, 2018) (quoting *Hainey v. Parrott*, 617 F. Supp.2d 668, 679 (S.D. Ohio 2007)). Like in *Wright*, "the settlement confers immediate benefits on the Plaintiffs, avoids the risks and expense in further litigation, and conserves judicial resources." *Id.* Thus, as in *Wright*, the Court should find that this factor supports approval of the Settlement.

    B.    <u>The Settlement Distributions Are Fair, Reasonable and Adequate</u>.

In addition to evaluating the seven factors discussed above, the Court must also "ensure that the distribution of the settlement proceeds is equitable." *Feiertag v. DDP Holdings, LLC*, No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *18 (S.D. Ohio Sep. 9, 2016) (citations omitted).

      1.    *The Individual Settlement Awards are Reasonable and Adequate*.

As part of their pre-mediation evaluation, Plaintiffs' Counsel retained an economist to analyze the class data provided by Defendant's counsel. Damages were calculated by adding unpaid work to each workday for every Plaintiff. Although Defendant contends that Plaintiffs are

9

not owed anything, the Parties agreed an amount that reflects approximately reflect approximately 109% of Plaintiffs' calculated overtime damages assuming 15 additional minutes of unpaid work each workday for the 2 years preceding when they joined the case. This amount of time was settled upon as reasonable based on the information learned during mediation, settlement discussions, and discovery. (Coffman Decl. ¶ 30; Contreras Decl. ¶ 27). This recovery is not just fair and reasonable, it is exceptional. *Yorba*, 2022 WL 2436952, at *5.

All individual Settlement Awards will be calculated proportionally. (Coffman Decl. ¶ 29; Contreras Decl. ¶ 26). As such, each Plaintiff will obtain compensation for alleged unpaid wages that are proportional to the amount of time he or she was employed by Defendant and the amount of hours he or she worked each week within the period of time covered by the settlement.

> 2. *Representative Plaintiff's Service Award is Proper and Reasonable.*

The Agreement provides for a service award of $10,000 to Representative Plaintiff in addition to her individual payment. (Coffman Decl. ¶ 25; Contreras Decl. ¶ 22). Courts routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *7 (N.D. Ohio Mar. 8, 2010)).

The proposed service award is within the range awarded by the Court. *See, e.g.*, *Satterly*, 2020 WL 6536342, at *9 (awarding the representative plaintiffs payments in various amounts from $2,500 to $15,000); *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *6 (S.D.

Ohio Jan. 18, 2019) (Dlott, J.) (granting a $10,000 service award to the named plaintiff); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *9 (S.D. Ohio Nov. 25, 2019) (Rice, J.) (granting a $10,000 service award to the named plaintiff); *Arledge v. Domino's Pizza, Inc.*, No. 3:16-CV-386-WHR, 2018 WL 5023950, at *6 (S.D. Ohio Oct. 17, 2018) (Rice, J.) (granting a $10,000 service award to the named plaintiff); *Swigart*, No. 1:11-cv-88, 2014 WL 3447947, at *7, *8 (S.D. Ohio July 11, 2014) (Black, J.) (approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 hybrid action); *Johnson v. Midwest Logistics Sys.*, No. 2:11-CV-1061, 2013 WL 2295880, at *1 (S.D. Ohio May 24, 2013) (Marbley, J.) (awarding $12,500 service award).

Here, the Representative Plaintiff contributed significant time, effort, and detailed factual information enabling Plaintiffs' Counsel to evaluate the strength of this case and reach a settlement of this matter. (Coffman Decl. ¶ 26; Contreras Decl. ¶ 23). Further, Representative Plaintiff attended the mediation which did not result in a settlement. She then had to provide Plaintiffs' Counsel with additional assistance in the months that followed until a settlement was reached. (Coffman Decl. ¶ 26; Contreras Decl. ¶ 23). In addition, Representative Plaintiff has agreed to execute a global release of all claims against Defendant in exchange for her service payment which will waive any further right to recovery for her retaliation claims. (Coffman Decl. ¶ 26; Contreras Decl. ¶ 23). As such, the time and efforts that Representative Plaintiff provided supports the requested service award. (Coffman Decl. ¶ 26; Contreras Decl. ¶ 23).

   3. *The Attorney Fees to Plaintiffs' Counsel Are Proper and Reasonable.*

After the Court has confirmed that the terms of settlement are fair to the Plaintiffs, it may review the Agreement as to the provision of fees and litigation expenses to Plaintiffs' Counsel.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the

11

action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

The Parties agreed to a payment of attorneys' fees to Plaintiffs' Counsel in the amount of one-third of the total settlement amount. "This Court has regularly approved attorneys' fees of 1/3 of the settlement fund in wage and hour cases." *Rawlings v. BMW Financial Services NA, LLC*, 2022 WL 2965294 at *7 (S.D. Ohio July 27, 2022); *See, e.g.*, *Croskey v. Hogan Servs., Inc.*, No. 2:20-cv-3062, 2021 WL 3012278, at *2 (S.D. Ohio July 15, 2021) (further citation omitted) ("[A]ttorneys' fees ... represent[ing] one-third of the total settlement amount ... are reasonable."); *Satterly*, 2020 WL 6536342, at *10 (collecting cases) ("Federal jurisprudence within the Sixth Circuit, including this Court, hold that 1/3 of the settlement fund is a 'normal fee amount in a wage and hour case.'"); *Campbell v. Wise Med. Staffing, Inc.*, No. 2:18-CV-493, 2020 WL 9259704, at *2 (S.D. Ohio Feb. 21, 2020) ("The Court ... finds that **one-third** of the Settlement Fund is a reasonable percentage of the fund to be awarded for attorney's fees.").

Further, a one-third fee is "typical for attorney's fees in a common fund" for wage and hour litigation in this District. *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 WL 4574509, at *4–8 (S.D. Ohio Sept. 20, 2019) (Morrison, J.). In fact, the "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Id.* at *4 (quoting *Swigart*, 2014 WL 3447947, at *5). This requested attorneys' fee amount "is a

12

normal fee amount in a wage and hour case." *Brandenburg*, 2019 WL 6310376, at *5 (citing *Carr v. Bob Evans Farms, Inc.*, No. l:17-cv-1875, 2018 WL 5023950, at *4 (N.D. Ohio July 27, 2018)); *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-355, 2021 WL 1966062, at *5–7 (S.D. Ohio May 17, 2021) (Rice, J.).

"Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 WL 687246, at *5 (S.D. Ohio Feb. 16, 2021) (Marbley, C.J.). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class[]." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007) (Marbley, J.). This Court has awarded class counsel a one-third (1/3) fee in similar cases. *See, e.g.*, *Mulledy v. Am. Air Furnace Co.*, 2:20-cv-5185 (S.D. Ohio Apr. 13, 2021); *Bailey v. Black Tie Mgmt. Co.*, 2:19-cv-1677, 2020 WL 4673163, at *5 (S.D. Ohio Aug. 12, 2020) (Sargus, J.).

Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses. The advanced expenses in a case this complex are substantial and are nearly $30,000. (Coffman Decl. ¶ 27; Contreras Decl. ¶ 24). Thus, Plaintiffs' Counsel "assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs., Inc.*, No. 2:15-cv-2959, 2019 WL 6485159, at *7 (S.D. Ohio Dec. 3, 2019) (Vascura, M.J.) (further citation omitted); *see also Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 WL 1614822, at *5 (N.D. Ohio Mar. 26, 2019) (further citation omitted)("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs

and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk").

Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiff's counsel for their prosecution of this case, and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g.*, *Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011) (Black, J.) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

        4.    *The Court Should Authorize Reimbursement to Plaintiffs' Counsel of Their Out-of-Pocket Expenses Incurred In This Case.*

Plaintiffs' Counsel should also be reimbursed their litigation expenses, which as of the date of this Joint Motion are $29,410.65. (Coffman Decl. ¶ 27; Contreras Decl. ¶ 24). The litigation expenses were reasonable and necessary to prosecute the case and were primarily comprised of the filing fee, the cost of notice distribution process, the cost of data analysis, and Plaintiffs' share of the mediator's fee. (Coffman Decl. ¶ 27; Contreras Decl. ¶ 24).

"Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg*, 2019 WL 6310376, at *7. In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.* Because Plaintiffs' Counsel's litigation expenses were incurred in the prosecution of the claims in this case and in obtaining the settlement, the Court should award reimbursement of these expenses to Plaintiffs' Counsel.

### III. CONCLUSION.

The Parties submit that this settlement is a fair and reasonable resolution of the disputed issues, which is consistent with the goal of securing the just, speedy, and inexpensive determination of every action. Accordingly, the Parties request that this Court: (1) enter the proposed Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice; (2) approve Plaintiffs' Counsel's request for attorney fees and expenses; (3) approve the requested service payment to Representative Plaintiff; (4) approve the payment to the Settlement Administrator; and (5) retain jurisdiction to enforce the settlement if necessary.

Respectfully submitted,

| COFFMAN LEGAL, LLC | ULMER & BERNE, LLP |
|---|---|
| */s/ Matthew J.P. Coffman* <br> Matthew J.P. Coffman (0085586) <br> Adam C. Gedling (0085256) <br> 1550 Old Henderson Rd. <br> Suite 126 <br> Columbus, OH 43220 <br> 614.949.1181 <br> 614.386.9964 (Fax) <br> mcoffman@mcoffmanlegal.com <br> agedling@mcoffmanlegal.com | */s/ Joseph J. Brennan* <br> Joseph J. Brennan (0085353) <br> Emma M. Tomsick (0101308) <br> 1660 West 2nd Street, Suite 1100 <br> Cleveland, OH 44113 <br> (216) 583-7000 / Fax: (216)583-7001 <br> jbrennan@ulmer.com <br> etomsick@ulmer.com |
| */s/ Peter Contreras* <br> Peter A. Contreras (0087530) <br> Contreras Law <br> 1550 Old Henderson Road <br> Suite 126 <br> Columbus, OH 43220 <br> Telephone: 614-787-4878 <br> Facsimile: 614-923-7369 <br> Peter.contreras@contrerasfirm.com | |
| *Attorneys for Plaintiffs and others similarly situated* | |

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 14th day of February, 2024, a true and accurate copy of the forgoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                          /s/ *Peter Contreras*
                                          Peter A. Contreras (0087530)